We'll call the next case in re Marriage of Ghatan, 516-0233. Counsel for the appellant, you may proceed. Can you state your name for the record? Yes. I'm pleased to do the work. Counsel, my name is Jean Aubuchon. I represent the appellant, Sina Ghatan, in a divorce case that actually is here for the second time. We enjoyed ourselves so much at the appellate court, we decided to come back. This has been going on for quite a while. Quite a while, yes, your honor. My client, originally a trial was represented by another counsel who he fired, and then he was pro se for his post-trial hearings. He presented to the trial court a $5 bill that was torn in half. And the point that he was trying to illustrate was, what can you do with only one half of this $5 bill? And, you know, nothing. Obviously, the judge said nothing. You only have half of a $5 bill. His point was that the judge did not have the full picture. You can't render a judgment without the full picture. And I believe that that is what the crux of these matters that are on appeal are about. First of all, the motions to reopen proofs. There's opposition that it was an abuse of discretion to not reopen the proofs in this case, as you will note in the record. And, in fact, in this court's previous order, it quoted the discussion that occurred between Mr. Gatton and the trial court, where the trial court said, Bring it all in. Bring whatever you want in. You will get it in. He did that. And the court then subsequently ruled that, no, the proofs would not be reopened, and those things would not get in. It is in the trial court's discretion, where there is a bench trial as opposed to a jury trial. I believe that the case law says that you should give more deference to reopening proofs and getting all of the information in. This information was not left out because of strategy or anything like that. I believe the record is complete with Mr. Gatton telling the court that his counsel did not do what he wanted him to do. That's why he fired him. So he wanted to get this evidence in, and it's very important evidence. I think this also leads to another issue of Mr. Gatton asking for more information, more documents, and discovery. The motion was presented, albeit in Mr. Gatton's pro se style. But if you look at the transcript from June 22, 2010, that motion was never addressed. There was never an explicit ruling on whether Mr. Gatton could get these documents from Ms. Gatton. I think it can be assumed that it was denied because they moved right along and the judge decided eventually not to reopen the proofs. Therefore, no discovery was had. But the cases cited in my brief state there is abuse of discretion if it prevents the denial of ordering a party to produce documents. If it prevents the ascertainment of truth or substantially affects a critical issue in the case. Mr. Gatton was asking for bank statements from Ms. Gatton's bank account that she claimed was non-marital and that allegedly was used to purchase properties that the court then found were non-marital. I believe that this is a very important issue because, as you know, you need to trace. If you've got properties that were purchased during a marriage, the person who's claiming that they're non-marital bears the burden of clear and convincing evidence that those properties were non-marital, came from marital funds. You need to trace. And there was no tracing really that was done here. It was all based on Ms. Gatton's assertions that, okay, this money came from my family. Well, actually, it turned out that not all of the money in that account came from her family. There was an untruth that was told there. And she later admitted that some of the money that was used to purchase one of the properties that the court found to be non-marital came from the sale of another property. Okay, so then we have to go back and look at, all right, where did the money to purchase this property come from? And there was absolutely no proof other than a bare assertion that, oh, yeah, my family's money paid for that property. That is not clear and convincing evidence, which just led me into my third point, which was whether it was proven that those properties were non-marital. There was definitely lacking information that my client had requested regarding that bank account that I think could have shown a light on this issue. But be that as it may, if you're looking at the evidence that was produced and the testimony that was elicited, I believe that if you go over this, you will find that there was not clear and convincing evidence that these properties came from a non-marital source. Therefore, they have to be deemed marital. So I believe that the trial court erred there by saying that those properties were non-marital. The other argument that we have here, which is actually a new argument, not from the last go-around, and that is that in the first supplemental judgment dissolution marriage, the trial court found that there was a disparity in incomes between the parties, that Ms. Gatton made more money than Mr. Gatton, and there was an accommodation made for that in the division of the retirement accounts. In the amended supplemental dissolution of marriage that is up for appeal here, there is no mention of that disparity in incomes. There is no provision for that in the division of the retirement accounts. It simply disappeared, and there is no explanation for that. I believe that it is an error for the trial court to have noted that discrepancy and allotted for that originally and then come back in the supplemental, the amended supplemental judgment dissolution of marriage and completely ignore that issue without any kind of explanation. The only thing that was up for consideration with the trial court after the appeal was what evidence did you consider? And that has nothing to do with the original findings that there was a disparity in income, and I'm at a loss as to know why that provision disappeared from the judgment. But we believe that that was inappropriate and that that either should be remanded or, you know, the court should here should take into consideration that original point that was made in the original supplemental judgment dissolution of marriage. I think overall each and every one of these points amounts to significant error that has caused a miscarriage of justice in this case. We have a couple getting divorced, and the law clearly was not followed, especially regarding the non-marital properties and what it takes to prove that they're non-marital. The court can make findings of credibility, and in fact the court did do that. In paragraph 9, as I read it, it says the court's findings set forth above on the post-trial motions are further supported by credibility issues. It is the court's opinion that the credibility of the respondent was lacking throughout the proceeding to the contrary petitioner was found to be a very credible witness. Isn't that within the province of the prior fact? It is, but credibility of witnesses is not the be-all, end-all, especially when you have other evidence, when you have documentary evidence. But documentary evidence contradicts the judgment on that issue. Well, evidence that my client wanted to produce that did not get in because the proofs were not reopened, and that issue in itself does not depend on credibility of the witnesses as far as whether you're going to reopen proofs or not. I don't believe that is a procedural thing. But the bank statements that were produced, tax returns that the parties had, I think I cite numerous things in my reply brief that state other things that you don't necessarily have to solely depend on the credibility of the witnesses to determine in a divorce case. Let me read that part of the judgment as to the proofs. The court further notes that the documents sought to be admitted by respondent were objected to by petitioner's counsel for various reasons on remand, including hearsay not in the proper form or simply self-serving summaries without proper foundation. The court does not have to rule on the objections based upon the above findings. All of the documents sought to be admitted were available at the time of the original hearing. So it appears that the court considered that motion and rejected counsel's or your client's arguments at that time. So how was the court wrong? Regarding the reopening proofs? Yes. Because the court told this man, you can get all this in. Can we really justify a judge telling a litigant that bring this in, I will consider it and then turning around and saying no? I'm sorry, but that's just not how we should be running our courts. You don't make promises that you don't keep, especially when you're wearing the black robe. You know, the litigants should be able to take the court at its word, and the word was bring it in. I will consider it. So I believe that that is vastly important. Regarding the other credibility issues, I would like to point out that Ms. Gatton was the one to have been found to have stated something that was untrue and then later changed her story. What was that about? That was regarding a deposit that was made to her account in the amount of approximately $70,000, and she had stated during the trial that that money came from her family. Then during the post-trial hearings, she admitted that it did not come from her family, that it came from the sale of another piece of real estate. And there was no proof as to how that real estate was acquired other than actually the judge is the one that said it. The judge said, well, that came from your family, right? And she said, right. How was that treated in the judgment, that $70,000? That was treated as being a non-marital source for the purchase of the property. And that's incorrect. There was no proof as to whether the property that was sold was purchased with non-marital funds. There simply was no tracing here. And we know that we really need to look at documents, we need to look at bank statements, we need to look at checks, all those things, in order to determine whether something is non-marital. Because the burden falls on the person who is saying that it's non-marital, and they have to prove that by clear and convincing evidence. So none of that was present. And she admitted that that $70,000 did not come from her family as she had previously testified. So if there's a credibility issue here, I think it falls on both sides. As the court is aware, it happens a lot in divorce cases. Usually the truth is somewhere in between. And it's the court's duty to find that in between and find out where the truth lies. But, Your Honors, I don't think that based on this record the court was able to do that, had the evidence to do it, because the court simply did not have full story. They didn't. The court did not have both halves of the $5 bill. And we are simply asking that Mr. Gatton be able to put forth both halves so that the court can get a full picture of property, of the funds, of everything in this divorce case, so that we can arrive at a fair judgment that treats both sides fairly. That's what we ask. Any other questions? No other than I would suggest putting that $5 bill back together. I'm going to go take it myself. Thank you very much. Counsel for Eppley. May it please the Court? My name is Susan Wilson, and I represent Evelyn Gatton, who is the petitioner, Eppley, in this matter. I've practiced for several years, but prior to practicing I had 10 years as a teacher. And I'm the only one that's here that was there at the trial from the beginning, from the beginning of the case, through the discovery, through all the days of trial, through the post-trial motion when Mr. Gatton was pro se, to all of the incidents that came afterwards. And as a teacher, I think it's important that you set the stage for what happened at the trial and post-trial. And you cannot do that without understanding the two litigants. These two litigants were raised in Iran. They were Iranian Jewish of nature. They came to the states in the 20s. I didn't know they were that many of them. There were very few, which may explain why they came to the states. But they were raised in a culture, a very patriarchal culture, and that came through throughout the proceedings. Mr. Gatton was represented by counsel, a very competent counsel, but Mr. Gatton, throughout the proceedings, the record is replete with him interrupting his counsel, trying to tell his counsel what to do, how to do it. He wanted to get information in. The counsel was telling him no. The court was telling him no. The objections were saying it's not evidence. It's not proper. He continued to attempt to do that throughout the trial. And the judge ruled correctly on all of those things that happened with regard to the evidence. Mr. Gatton, throughout the proceedings then, was very contentious. And my client, on the other hand, and you will note in the record and in the judge's ruling, at one point, first of all, they were able to amass several pieces of real estate to their credit, and all but two of the pieces of real estate were in the name of a couple. Two of them were in my client's name only. And one of the issues before the court is how did the court determine that those were non-verbal pieces of property? And the way that the court determined that, first of all, they talked about this document that showed that there was $70,000 plus in an account at one point. If you look at the record, that document came into the trial midway through the first day of trial. It had never been, there was no evidence of that document before. Mr. Gatton insisted on putting it in, and the judge said, I'm going to let it in. I'm a judge. This is not a jury. I will take it for the weight that it is. But the fact is that it had never been produced before, and he brought something in, and we objected to it. But the court said, I'm the one here who can judge this. That night, and the issue was where the money came from. That night, my client went home, and she came back to court the next day. She had torn up the place at home trying to find out the truth about this information that Mr. Gatton had brought in on the first day of trial. And she found a document showing that there was $70,000, and it was put into this account the exact amount that was at issue. At that point, she wasn't sure, but her testimony was, this money did not come from marital property. I've never, and she's a real estate agent, never in my life have I gotten a $70,000 commission. It had to come from my family or something of that sort. As it turned out, it was proven that the property, this Creston Drive property, which you'll see mentioned, a piece of property in her name only was sold. That was the amount of money, and then that amount of money was then used to buy these other two pieces of property at issue. Why that's important. Is there documentary evidence in the record to support that? Well, there's a $70,000 statement, and then there's other. There's not documentary evidence, but there's basically a consensus by everybody, and it's not objected to or not found to be inaccurate. Creston Drive, the property in my client's name only, was the source of the sale that netted that $70,000, which was at issue. And the respondent conceded that in the trial? Yes. And I don't remember, there was a two-day trial, there was a post-trial motion, then there were other post-trial motions. It's in the record that he conceded that. Now, why that's important, and at one point Mr. Catan calls my client's father, who was still in Iran at the time, the Iranian Rockefeller. He had a lot of money. He contributed to the family in great amounts at different times. Why that's important. He had great respect for my client's father. He had no respect for my client, in my opinion. But the fact that you have property put into his wife's name alone, I think speaks volumes, given the setting that I've set up earlier. Based on that, not only do we have the Preston Drive, which was in her name only, which was sold, and then two other properties were put in her name only. These are the only two properties of all the property they have that are in her name only. And if you look at page four of the court's judgment, he says the court finds that the petitioner's met her burden to establish that these two properties are non-nerdal property. And then he goes through A, B, C, D, E, all the reasons, on top of the fact that they were in her name only, and the history given of the parties, I think is very compelling. The property was managed by Mr. Katana. At some point about the time of the breakdown of the marriage, he collected the rents. He stopped paying the taxes. My client finds out just before the trial that the taxes have been paid on all of the joint property. He hasn't paid the money, the taxes on her two properties for the last two and a half years. She rushes to the courthouse, salvages the property, but for that, and he admits in the record, yep, I got the rent, but I didn't pay the taxes. On top of that, he gets a $10,000 check for damage to one of these two pieces of property. He takes it, puts it in his own account, and he says to the court, I deserve that for repairs that I have made earlier. He doesn't make the repairs with the $10,000. He takes it, puts it in his own account, and says, I deserve that money. All the other properties, he repaired, he mended, he took care of. He didn't ask for a dime. So he treated this property in every way as her non-real property, and he says at one point, he throws the keys at her, and he says, it's yours. He throws the keys to the properties at her. So on top of the fact we have property in her name only, given the history of the family and the patriarchal society that they came in, and then you have on top of it a myriad of other things, which I consider to be icing on the cake, showing clear intent that this man knew that this property was hers, and that's why he stopped doing anything toward it, toward the end, when he knew they were going to divide up their property. He didn't care about that because it wasn't going to be his problem anyway. And I don't want to spend too much time on that without getting to the motion to reopen Cruz, because that, again, not many times does a judge get two chances, two bites of the apple, so to speak. When we went through the first trial, Mr. Gatton had fired his attorney before we got to the post-trial motion. The record is not, in the first trial, post-trial motion, is not real clear. And the reason is Mr. Gatton comes in, he now has been unleashed, he has no attorney telling him what he can do and what he can't do. He brings a big, huge paper that says the bridge to nowhere, and he said this traces something. He sets it out on the judge's bench. He's not sitting back at counsel table, he's sitting in front, and he starts rambling, I think, is the best way you can do it. The real issue with that trial was there had been, 10 days after the trial, Mr. Gatton had sent a letter to me through his counsel saying, we found two accounts that your client didn't bring up at the time of trial. And my client's like, I don't know what you're talking about. So she goes to the bank, and this is all on the record, both the post-trial motion and in the second trial after the appellate opinion came down. She goes to the bank, she finds not only those two, which had been going to Mr. Gatton's address this whole time because they'd been separated. She finds two more accounts in his name as well that had been going to his house the whole time. These four accounts she finds 10 days after the trial. He wants to reopen and put in the two that are in her name. And we said, hey, look, if you're going to open them up, let's put them all in. I mean, it's just fair. Unfortunately, what happened at that trial, partially, I think, because we had a pro se litigant who's talking and interrupting, and procedure was very difficult to maintain if you, as a judge or as another attorney with a pro se litigant, it's not easy to maintain control and to make a clean record when you have somebody kind of out of control, which he was. So we said, we don't care if it comes in, but don't put in two without putting the other two. And the judge doesn't make a clean ruling on that, so it gets sent back to the court to say, hey, what happened? What really happened that day? Did you consider it? Did you not consider it? And Judge Kelly correctly says at the second post-trial motion, all four of those documents were known to Mr. Gatton. They were going to his house. He knew about all four of them the whole time. Why did he not disclose them? Common sense. Ten days after the trial, he goes to the bank, finds out two of them are in her name, and he can't liquidate them. Ten days after the trial, I get a letter saying, hey, your client didn't disclose these. We've got to put these into the record. Common sense says the reason it didn't get disclosed earlier is, I think, he might have been thinking, well, they'll just not say anything. And this is speculation, but I think the court, the testimony at the last trial makes that very clear. He knew about all four of them the whole time and didn't disclose them. And we can't disregard what question you'd ask for about the credibility of the clients. Mr. Gatton, and he's not a bad person. He's not a person that you can hate, but he is determined to get his story across, and the way he does it is his way. My client, if you look in the original judgment and in the second judgment as well, there was property that was in joint names with Mr. Gatton, his sister, and my client. It was clearly a two-thirds, one-third marital property, one-third non-marital property of his sister. He, and the testimony is clear, he wouldn't agree to two-thirds, one-third. He said, we treated it as 50-50. My sister got 50 percent, we got 50 percent. And so the judge rules. My client said, that's fine. I don't care. Let's just get on with this, and that's in the record as well. The judge rules in division of the property. I'm dividing this property and assuming it's 50 percent marital rather than two-thirds, which is what the documents show, because my client agreed. Not because that's what the record shows. It's a $50,000 swing in value. She lost $50,000 in marital property by agreeing to that, but she said, fine. He just kept at it, kept at it, kept at it until she says to the judge, let's make it 50-50. I don't care. And the judge says that in his ruling. She was conciliatory. She was trying to do what was fair. Even at the end, she says, I'm willing to put these documents in, but let's put them all in. And throughout, Mr. Catan is pushing and pushing and trying to second-guess his attorney, second-guess the court. All of the things that got excluded were because they weren't proper evidence. They weren't hearsay. They weren't the best evidence. They were there at the time of trial and shouldn't have been allowed in later. There's nothing that happened that wasn't clearly correct. It's just Mr. Catan was muddying the waters by all of his things that he said, and particularly at that post-trial motion when he was pro se. So I would ask the court to listen to, to take into consideration the court's viewpoint of this matter, his ability to see the parties, his ability to view the credibility, his ability to just see the demeanor of the parties, and to judge based on what he was seeing and what he was hearing throughout a couple days of trial and a lot of post-trial motions, that this, what happened, was exactly what should happen and was more than fair. Any questions? Thank you, counsel.  Yes, thank you. Regarding the classification of those properties, there has been a lot of discussion about whose name the properties were in. As you know from the face of the statute, that is not what decides what is marital and what is non-marital. The statute specifically says, without consideration as to whose name it's in. If something is acquired during the marriage, it's marital, unless you prove otherwise. And the, I would like to point out in that supplemental, amended supplemental judgment of dissolution of marriage that counsel points to that page four, where the court goes through the history of the properties. This does not conform with what counsel said was actually admitted to at the hearing. It says that the $70,000 she testified came from her family, and that was included as non-marital funds from her family, that the court relied on that to say that these properties were non-marital. When it's clear from the record during the post-trial hearings that that money did not come from her family, Ms. Gatton admitted that that was a misstatement and that that came from the sale of another property. And we have no evidence, none whatsoever, as to the source of the funds for that property, which also was purchased during the marriage. So if that property, there is no evidence that that is non-marital, even though it's just in her name, and it was used to purchase these other properties, then they must be marital. Absent some kind of evidence to the contrary. Regarding Mr. Gatton's statements about him not wanting to make repairs on those properties and throwing the keys at the wife and saying, take it, it's yours, is that a binding admission on him whenever you say something in the heat of an argument to your spouse when you're undergoing a divorce? I don't think so. Was that binding that she gave the $50,000? Yes, actually, she agreed to that because she had to. The proof was there. This is how the parties treated these apartment buildings that we're talking about, that was the 50% for the sister and 50% for the married couple. The tax returns were there that showed that that's how they treated them. Sister took 50% of all the income and deductions, and the married couple took 50% of the income and deductions. So I don't see what's the big deal about her giving in on that whenever it was a very clear point that that's how the property should have been divided. That's what the marital interest was, was only half of the property. You have to look at the whole context of the testimony regarding Mr. Gatton's statements about whether these properties should be marital or non-marital, whether they're Ms. Gatton's or not, and I point to those things in my reply brief. He did actually undertake to make repairs to those properties, even after this, whenever the pipes burst. Also, the parties had jointly insured these properties on their joint insurance, and I think that if Mr. Gatton would have had the opportunity to put on all the evidence he wanted to put on, I think it would have further shown that there was marital money that went into these properties, and just was, even if you would think that they're non-marital, they were commingled at a minimum. There were also other documents that he wanted in, not just his charts and things that he did. For example, there was a document, it was a statement from his 401k, that would have shown that funds were not dissipated from that account. The court found that there was a dissipation, and Mr. Gatton wanted to get that document in and show there was actually a market, a drop in the market that caused his account to go down in 2008, if you all remember what 2008 was like. He wanted to get that in, and that was provided to counsel, but the court would not let that come in. That was like, I think, like a $70,000 difference in the value of his 401k, and the court found that that was dissipation. Mr. Gatton should have been allowed to put that evidence in. It was not a surprise, it would have been provided to counsel, and again, I just believe that this court should look at the full picture. Thank you very much. Thank you, counsel. The court will take this matter under advisement and issue a decision in due course.